1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  STEVEN G. WARNER, State Bar No. 239269
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA 94102-7004
7    Telephone: (415) 703-5747
     Fax: (415) 703-5843
8    Email: Steven.Warner@doj.ca.gov

9  Attorneys for Respondent Warden Robert L. Ayers, Jr.
   SF2007200507

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **ROBERT G. COTÉ,** | C07-2801 PJH |
| Petitioner, | **ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **ROBERT L. AYERS, JR., WARDEN,** | |
| Respondent. | Judge: The Honorable Phyllis J. Hamilton |

**INTRODUCTION**

Robert Coté, an inmate at San Quentin State Prison, represents himself in this habeas corpus action. Coté alleges that the Board of Parole Hearings (Board) unconstitutionally found him unsuitable for parole at a 2006 subsequent parole consideration hearing. Specifically, Coté argues that the Board violated his due process rights when they denied him parole based on the commitment offense, his prior criminal history, and his prison disciplinary history, and that the Board failed to provide him individualized consideration at his hearing. Coté also argues that his due process rights require that the Board rely on a standard of proof higher than the some-

evidence test in denying parole.

The Court issued an order to show cause why Coté's petition should not be granted on June 26, 2007. Respondent Acting Warden Robert L. Ayers, Jr., answers as follows:

### ANSWER TO ORDER TO SHOW CAUSE

In response to the petition for writ of habeas corpus filed on April 16, 2007 in the United States District Court for the Central District of California and later transferred to this Court, Respondent hereby admits, denies, and alleges the following:

1. Respondent affirmatively alleges that Coté is lawfully in the custody of the California Department of Corrections and Rehabilitation following his February 24, 1977 conviction of first-degree murder. (Ex. A, Abstract of Judgment, at 1.) He is currently serving an indeterminate sentence of seven years to life. (*See id.* at 2; Ex. B, Life Prisoner Evaluation Report, at 1.) Coté does not challenge his underlying conviction in the current proceeding.

2. Respondent affirmatively alleges that on September 17, 1976, police responded to a man's telephone call reporting a rape in progress (the caller saw a man kneeling over and beating a woman lying on the ground) in a vegetable garden behind a Home Gardens, California apartment building. (Ex. C, Probation Officer's Post-Sentence Report, at 4.) The victim – Rose McCarthy – died before police arrived and was found nude, with a damaged and bloodied face and head, teeth marks on her shoulder and breast, and her shirt wrapped around her neck. (*Id.*) A belt found near the victim was inscribed with the words "Bob Coté." (*Id.*) Police arrested a sleeping Coté at his residence and found dirt-covered and blood-soaked jeans, and bloody sheets, in his bedroom. (*Id.* at 4-5.)

3. Respondent affirmatively alleges that Coté admitted to having started drinking alcohol in the morning or early afternoon on the day that he murdered Rose McCarthy. (Ex. D, Subsequent Parole Consideration Hearing [Transcript], at 28.) Respondent further affirmatively alleges that Coté admitted to having used heroin, methamphetamine, and phencyclidine (PCP) on the day that he murdered Rose McCarthy. (*Id.* at 34.) Respondent also affirmatively alleges that Coté admitted that on the night that he murdered Rose McCarthy (whom he encountered near a hamburger stand), Coté thought that she was a heroin seller who refused to give heroin to him

1 and his friends after she accepted their money. (*Id.* at 29-30.)

    4. Respondent affirmatively alleges that Coté admits to initially having lied to police officers when he told them that two people called him names and a dog bit him during the time between his being at the hamburger stand and his murdering Rose McCarthy in the vegetable garden. (*Id.* at 33; *see* Ex. C at 8.)

    5. Respondent affirmatively alleges that Coté was convicted of burglary in 1975 and sentenced to two days in jail and two years of probation. (Ex. C at 3.) Respondent further affirmatively alleges that Coté admitted that this burglary was related to an attempt to obtain drugs. (Ex. D at 23-24.) Respondent also affirmatively alleges that Coté was convicted of public intoxication around the time of the murder, and that he admitted to having received thirteen traffic violations. (Ex. C at 3-4; Ex. D at 21.)

    6. Respondent affirmatively alleges that Coté started drinking alcohol at age ten and using marijuana at age thirteen (becoming a daily marijuana user at age fourteen). (Ex. D at 20.) Respondent further affirmatively alleges that Coté was a heavy methamphetamine user from 1968 until he murdered Rose McCarthy in 1976. (Ex. D at 20.) Respondent further affirmatively alleges that Coté has used cocaine, codeine, heroin, LSD, marijuana, methamphetamine, and PCP, and admitted to having used drugs "mostly everyday." (*Id.*; *see also* Ex. C at 3.)

    7. Respondent affirmatively alleges that Coté has received thirty-four Rules Violation Reports (RVRs) while incarcerated, with his most-recent RVR occurring in 2001 for possession of inmate-manufactured alcohol. (Ex. B at 6-8.) Respondent further affirmatively alleges that Coté received an RVR for being under the influence of an intoxicant in 1981. (*Id.* at 7.) Respondent also affirmatively alleges that Coté has received five minor disciplinary violations from 1998 to 2003. (*Id.* at 8.)

    8. Respondent affirmatively alleges that Coté has been diagnosed with polysubstance dependence. (Ex. E, Psychological Evaluation for the Board of Prison Terms, at 4.)

    9. Respondent affirmatively alleges that Coté admitted to having stopped participating in Alcoholics Anonymous in 2003 (he started participating only in 1999). (Ex. D at 43.)

    10. Respondent affirmatively alleges that a representative of the Riverside County District

Attorney's Office appeared at Coté's 2006 hearing to oppose Coté's parole. (*Id.* at 75-78.)

11. Respondent admits that the Board denied Coté parole on April 20, 2006.

12. Respondent admits that Coté filed a petition in Riverside County Superior Court generally alleging the same causes of action that he alleges here. (Ex. F, Petition for Writ of Habeas Corpus.) Respondent further admits that the Riverside County Superior Court summarily denied Coté's petition for writ of habeas corpus on November 14, 2006. (Ex. G, Order of Denial.)

13. Respondent admits that Coté filed a petition in the California Court of Appeal generally alleging the same causes of action that he alleges here. (Ex. H, Petition for Writ of Habeas Corpus.) Respondent further admits that the California Court of Appeal summarily denied Coté's petition for writ of habeas corpus on February 1, 2007. (Ex. I, Order.)

14. Respondent admits that Coté filed a petition for review in the California Supreme Court generally alleging the same causes of action that he alleges here. (Ex. J, Petition for Writ of Habeas Corpus.) Respondent admits that the California Supreme Court summarily denied Coté's petition on March 14, 2007. (Ex. K, Supreme Court Denial.) Respondent further admits that Coté thus exhausted his state court remedies in regard to the claims alleged here stemming from his 2006 subsequent parole consideration hearing. However, Respondent denies that Coté exhausted his claims to the extent that they are more broadly interpreted to encompass any systematic issues beyond this particular review of parole denial.

15. Respondent preserves the argument that Coté does not have a federally protected liberty interest in parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979) (liberty interest in conditional parole release date created by unique structure and language of state parole statute); *Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal liberty interest in parole because serving a contemplated sentence does not create an atypical or significant hardship compared with ordinary prison life); and *In re Dannenberg*, 34 Cal. 4th 1061, 1087 (2005) (California's parole scheme is a two-step process that does not impose a mandatory duty to grant life inmates parole before a suitability finding). *Contra Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006) (holding that California inmates have a

federally protected liberty interest in a parole date).

16. Respondent denies that the state courts' denials of habeas corpus relief were contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law, or that the denials were based on an unreasonable interpretation of facts in light of the evidence presented. Coté therefore fails to make a case for relief under AEDPA.

17. Respondent affirmatively alleges that Coté had an opportunity to present his case to the Board, and that the Board provided him with a detailed explanation for its parole denial. Thus, Coté received all process due under *Greenholtz*, the only clearly established federal law regarding inmates' due process rights at parole consideration hearings.

18. Respondent affirmatively alleges that the Board considered all relevant and reliable evidence before it, and that some evidence supports its decision. However, Respondent further affirmatively alleges that the some-evidence standard does not apply in federal habeas proceedings challenging parole denials, and that the some-evidence standard is only clearly established federal law in the prison disciplinary context.

19. Respondent affirmatively alleges that the Board properly considered the gravity of Coté's commitment offense as required under California Penal Code section 3041(b).

20. Respondent denies that the Board improperly relied on the commitment offense, or relied solely on the commitment offense. The Board also relied on factors other than the commitment offense in denying Coté parole. However, the California Supreme Court held in *Dannenberg*, 34 Cal. 4th at 1094, that the Board may rely *solely* on the circumstances of the commitment offense. Respondent further affirmatively alleges that the argument that the Board may not continue to rely on the circumstances of his commitment offense to deny parole is not cognizable under AEDPA because it relies on circuit court dicta in *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003).

21. Respondent denies that the Board manipulated any facts or evidence, or otherwise provided Coté with an unfair hearing. Respondent affirmatively alleges that Coté offers no proof that the Board manipulated facts or evidence at the hearing, or otherwise provided an unfair hearing.

22. Respondent denies that the Board failed to provide Coté with individualized consideration (or to actually consider all relevant and reliable information) at his hearing. Respondent affirmatively alleges that Coté does not offer any evidence that the Board failed to provide him individualized consideration at his hearing.

23. Respondent denies that the Board's weighing process for factors that it may consider or that it actually considers violates Coté's equal protection rights. Respondent affirmatively alleges that the Board is free to assign whatever weight it chooses to any relevant factors that it may consider or actually considers in determining parole suitability.

24. Respondent denies that the Board used the some-evidence test in denying Coté parole. However, to the extent that the Court interprets Coté's third claim as challenging the state courts' use of the some-evidence test, Respondent affirmatively alleges that the state courts properly applied the some-evidence standard to evaluate the Board's decision. *Dannenberg*, 34 Cal. 4th at 1071. Respondent further affirmatively alleges that Coté's argument that the some-evidence standard requires some evidence that an inmate is a current, unreasonable danger to society is legally incorrect. Respondent affirmatively alleges that the correct application of the some-evidence test is whether some evidence in the record supports the factual basis for the Board's parole denial. Respondent also affirmatively alleges that there is no legal authority supporting Coté's argument that the state courts should be held to a higher evidentiary standard.

25. Respondent admits that Coté's claims are timely under 28 U.S.C. § 2244(d)(1) (2000), and are not barred by any other procedural defense.

26. Respondent denies that an evidentiary hearing is necessary in this matter.

27. Respondent affirmatively alleges that Coté fails to state or establish any grounds for habeas corpus relief.

28. Except as expressly admitted above, Respondent denies, generally and specifically, each and every allegation in the petition, and specifically denies that Coté's administrative, statutory or constitutional rights have been violated in any way.

Accordingly, Respondent respectfully requests that the Court deny the petition for writ of habeas corpus, and dismiss these proceedings.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**ARGUMENT**

**I.**

**THE STATE COURTS' DENIALS OF COTÉ'S HABEAS PETITION WERE NEITHER CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

Under AEDPA, a federal court may grant a writ of habeas corpus on a claim that a state court already adjudicated on the merits only if the state court's adjudication was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding." 28 U.S.C. § 2254(d)(1-2).

The state court decisions denying Coté's claim for habeas relief were neither contrary to or an unreasonable application of federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented. First, Coté received all process required under *Greenholtz*, the only clearly established federal law specifically addressing the due process rights of inmates in a parole suitability decision. Second, the state court decisions did not involve an unreasonable interpretation of the evidence; rather, some evidence supports the state courts' holdings. Thus, Coté fails to establish a violation of AEDPA standards, and the state courts decisions densying habeas relief must stand.

**A.   The State Court Decisions Were Not Contrary to Clearly Established Federal Law.**

In *Greenholtz*, the United States Supreme Court established the due process protections required in a state parole system. The Court held that the only process due at a parole consideration hearing is an opportunity for the inmate to present his case, and an explanation for a parole denial. *Greenholtz*, 442 U.S. at 16. Coté's claim fails because he received both of these protections at his 2006 hearing.

First, Coté fully presented his case to the Board. Coté discussed his commitment offense,

Answer to Order to Show Cause; Memorandum of Points and Authorities                    *Cote v. Ayers*
                                                                                        Case No. C07-2801 PJH

7

his social history and criminal background, and employment, educational, and vocational activity while incarcerated. (Ex. D at 27-34, 15-24, 43-48.) The Board read a portion of one of Coté's psychological reports into the record, and Coté told the Board his plans were he to be released on parole. (*Id.* at 49-52, 38, 61-66.) Coté delivered a closing statement outlining the reasons why he believed that he should be found suitable for parole. (*Id.* at 84-87.)

Second, Coté received a thorough explanation as to why the Board denied parole. (*Id.* at 98-100.) The Board explained that the offense was carried out in an especially cruel and callous manner, that the victim was defiled and mutilated, that the offense demonstrated an exceptionally callous disregard for human suffering, and that the motive for the crime was inexplicable and trivial in relation to the offense. (*Id.* at 98.) The Board noted that the murder was part of an escalating pattern of criminal conduct and that Coté failed to benefit from society's prior attempts at rehabilitation (probation and jail time). (*Id.* at 99.) The Board further noted that Coté's prison disciplinary history included thirty-four RVRs, and that Coté received one of these as recently as 2001. (*Id.*) The Board also cited Coté's unstable relationships with others, insufficient self-help participation, lack of employment plans on parole, and the district attorney's opposition. (*Id.*) The Board recommended further programming, self-help, and therapy for Coté to learn to deal with stress non-destructively and to gain insight about the crime. (*Id.* at 99-100.) The panel commended Coté for his educational achievements while incarcerated; however, it found that Coté would still pose an unreasonable risk of danger to society were he to be released on parole. (*Id.* at 100, 98.)

Thus, Coté presented his case to the Board and received an explanation as to why the Board denied him parole. Because he received all process due under *Greenholtz*, the state courts properly upheld the Board's decision, and the petition should be denied.

Moreover, the some-evidence standard does not apply in federal habeas proceedings challenging parole denials. The United States Supreme Court recently reiterated that for AEDPA purposes, "clearly established federal law" refers only to the holdings of the nation's highest court on the specific issue presented. *Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 653 (2006). In *Musladin*, a convicted murderer filed a federal habeas petition after a state appeals court

upheld the victim's family members' wearing of buttons with the victim's photograph on them during the trial as not inherently or actually prejudicial under two United State Supreme Court cases. *Id.* at 651-52. The Court of Appeals for the Ninth Circuit reversed, noting that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law – the prejudice test in the two United State Supreme Court cases. *Id.* at 652. In vacating the Ninth Circuit's decision, the Supreme Court stated that the cases that the Ninth Circuit relied on involved state-sponsored courtroom practices – making a defendant wear prison clothing during trial in one and seating four uniformed troopers behind a defendant on trial in the other – that were unlike the private action of the victim's family members' wearing of buttons. *Id.* at 653-54. The *Musladin* Court further noted that the two cases were not clearly established federal law on the issue at hand because the United States Supreme Court "has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial." *Id.* at 653. Consequently, the Court held that the Ninth Circuit erred by importing a federal test for prejudicial state action in a courtroom to private spectators' courtroom conduct. *Id.* at 654.

Recently, in *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933, 1942 (2007), the United States Supreme Court again factually distinguished two of its cases that the Ninth Circuit cited in holding that the state court unreasonably applied clearly established federal law when finding ineffective assistance of counsel claims frivolous. In *Landrigan*, a criminal defendant questioned by the judge told the court that he did not want mitigating evidence presented (his attorney advised otherwise). *Id.* at 1937-38. The United States Supreme Court reasoned that the two cases that the Ninth Circuit relied on were not clearly established federal law by distinguishing them factually. *See id.* at 1942. The Court noted that one case involved an attorney's failure to provide mitigating evidence, while the other case concerned a defendant who refused to help develop mitigating evidence. *Id.*

Likewise, the Ninth Circuit has recently affirmed this principle in a number of cases. For instance, in *Foote v. Del Papa*, No. 06-15094, 2007 U.S. App. LEXIS 15822 (9th Cir. July 3, 2007), the Ninth Circuit affirmed the district court's denial of a petition alleging ineffective

*Cote v. Ayers*
Case No. C07-2801 PJH

9

assistance of appellate counsel based on an alleged conflict of interest because no Supreme Court case has held that such an irreconcilable conflict violates the Sixth Amendment. *Id.* at *6-7. Similarly, in *Nguyen v. Garcia*, 477 F.3d 716 (9th Cir. 2007), the Ninth Circuit upheld the state appellate court's decision – refusing to apply *Wainwright v. Greenfield*, 474 U.S. 284 (1986) to a competency hearing – as not contrary to clearly established federal law because the Supreme Court had not held that *Wainwright* applied to competency hearings. *Id.* at 718, 727. Finally, in *Locke v. Cattell*, 476 F.3d 46 (9th Cir. 2007), the Ninth Circuit affirmed the denial of a petition based on a proposed violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) because given that no Supreme Court case supported petitioner's contention that his admission to a crime transformed a police interview into a custodial interrogation, the state court's decision denying relief was not unreasonable under AEDPA. *Cattell*, 476 F.3d at 53.

Similarly, given that *Hill* applied the some-evidence standard to a prison disciplinary hearing and Coté contests a parole consideration hearing, the some-evidence standard does not apply to this case. Because *Greenholtz* is the *only* United States Supreme Court authority describing the process due at a parole consideration hearing when an inmate has a federal liberty interest in parole, the *Greenholtz* test, not the some-evidence standard, should apply in this proceeding. Regardless, Respondent recognizes that the Ninth Circuit has held otherwise, most recently in *Irons v. Carey*, ___ F.3d ___, No. 05-15275, 2007 WL 2027359 (9th Cir. July 13, 2007), and will argue this case accordingly.

### B. The State Court Decisions Upholding the Board's Parole Denial Were a Reasonable Application of Clearly Established Federal Law.

Assuming that Coté has a federally protected liberty interest in parole and that the "minimally stringent" some-evidence standard applies, the requirements of due process would be satisfied if there is "any evidence in the record that could support the conclusion reached by the board." *See Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (applying some-evidence standard to prison disciplinary hearing).

The some-evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence;" rather, it

assures that "the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." *Hill*, 472 U.S. at 455, 457. Thus, both the "reasonable determination" standard of AEDPA and the some-evidence standard of *Hill* are very minimal standards.

Respondent recognizes that when, as here, the state courts have not addressed the constitutional issues in a reasoned decision, federal courts may engage in an independent review. *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006) (conducting independent review of the record because state court did not explain reasoning when it found only that petition "failed to set forth sufficient facts to establish a prima facie case for relief"). Independent review of the record, however, "is not de novo review of the constitutional issue, but rather, the only method by which [the court] can determine whether a silent state court decision is objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (citations omitted).

An independent review of the record in this case reveals that the state courts reasonably applied the some-evidence standard. The Board found that the offense was carried out in an especially cruel and callous manner. (*See* Ex. D at 98.) The Board based this finding on the fact that Coté, a large man with martial arts training and a military background, beat to death a woman who was not very large. (*See id.*) The Board further found that the victim was defiled and mutilated, that the offense demonstrated an exceptionally callous disregard for human suffering, and that the motive for the crime was inexplicable and trivial in relation to the offense. (*See id.* at 98.) The Board also found that Coté did not benefit from society's attempts to rehabilitate him based on the pre-murder punishment for his prior criminal record. (*See id.* at 99.) Additionally, the Board also found that Coté had an extensive prison disciplinary history, unstable relationships with others, insufficient self-help participation, and lacked parole employment plans. (*Id.*) As some evidence supports the Board's denial, the state courts' upholding of the Board's denial was a reasonable application of the some-evidence standard, and Coté's claim must fail.

///

Furthermore, Coté's argument that due process precludes the Board from relying on the circumstances of his commitment offense in denying parole is without merit because Coté cites (and there exists) no clearly established United States Supreme Court law precluding the Board's reliance on Coté's commitment offense.

Moreover, the argument fails under state law. First, California Penal Code section 3041 requires that the Board examine the commitment offense, as the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." Second, the California Supreme Court held in *Dannenberg*, 34 Cal. 4th at 1094, that the Board may rely *solely* on the circumstances of the commitment offense.

The holding in *Biggs* does not compel a different result. In *Biggs*, 334 F.3d at 917, the Ninth Circuit stated that the Board's continued reliance on an unchanging factor to deny parole "could result in a due process violation." However, the *Biggs* court did not definitively indicate that reliance on an unchanging factor necessarily violates due process, only that it possibly could. The court praised Biggs for being "a model inmate," and found that the record was "replete with the gains Biggs has made," including a master's degree in business administration. *Id.* at 912. Nonetheless, the court denied habeas relief because the Board's decision to deny parole – which relied solely on the commitment offense – was supported by some evidence.

Most importantly, the statement in *Biggs* is merely circuit court dicta, and not clearly established federal law sufficient to overturn a state court decision under AEDPA. *Crater v. Galaza*, ___ F.3d ___, No. 05-17027, 2007 U.S. App. LEXIS 16182, *18 (9th Cir. July 9, 2007) (holding that AEDPA "renders decisions by lower courts non-dispositive for habeas appeals"). The Ninth Circuit recently emphasized that *Biggs* does not contain mandatory language, and that "[u]nder AEDPA, it is not our function to speculate about how future parole hearings could proceed." *Sass, supra*, 461 F.3d at 1129. The *Sass* court then rejected the argument that the Board's reliance on "immutable behavioral evidence" to deny parole violated federal due

process.[1] *Id.* Although the Ninth Circuit recently revisited this issue again in *Irons* dicta, it held there that despite "substantial" evidence of rehabilitation in that case, the Board acted properly within its discretion in continuing to rely on the circumstances of the inmate's offense to deny parole. *Irons, supra,* ___ F.3d ___, 2007 WL 2027359 at *4-5, *6. Thus, *Biggs* does not preclude the Board from using the circumstances of the commitment offense to deny parole, nor may its dicta be used to overturn a valid state court decision.

### C. The State Court Decisions Upholding the Board's Parole Denial Were a Reasonable Interpretation of the Facts in Light of the Evidence Presented.

The second standard under AEDPA is that state court habeas decisions must be based on a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2) (2000). Coté does not challenge the implied factual bases of the state courts' decisions in his petition, and he bears the burden of proof on this prong. Coté must show that the state courts' factual determinations were objectively unreasonable. 28 U.S.C. § 2254(e)(1); *Juan H. v. Allen*, 408 F.3d 1262, 1270 (9th Cir. 2005). In his petition Coté fails to prove that the state courts' upholding of his parole denial was based on objectively unreasonable factual determinations. The state courts' upholding of Coté's parole denial is both supported by the record and a reasonable interpretation of the evidence presented. As such, the state courts' denials of habeas relief meet the standards of AEDPA, and there are no grounds for this Court to overturn the decisions. The petition for writ of habeas corpus should be denied.

///

///

///

---

1. This Court has also recognized that the Board may properly rely on static factors to deny parole. In a recent decision, this Court noted that "[p]ast criminal conduct is not some arbitrary factor like eye color that has nothing to do with present dangerousness. Recidivism concerns are genuine. California's parole scheme does not offend due process by allowing the [Board] to predict that an inmate presents a present danger based on a crime he committed many years ago." *Hill v. Kane*, 2006 WL 3020923 at *3 (Oct. 26, 2006) (N.D. Cal.) (citations omitted).

## CONCLUSION

Under AEDPA, to establish entitlement to reversal of the Board's parole denial, Coté must prove that the state court decisions denying habeas relief were contrary to, or an unreasonable interpretation of, clearly established Supreme Court law, or that the decisions involved unreasonable factual determinations. Coté does not offer such proof. First, Coté received all process due under *Greenholtz*, the only clearly established federal law specifying due process required at parole hearings. Second, the state court decisions denying Coté parole did not involve unreasonable factual determinations because some evidence supports the Board's parole denial. Third, Coté's argument that the Board improperly and solely relied on his commitment offense in denying parole is untrue. However, such reliance would not be contrary to any clearly established United States Supreme Court law. Therefore, Respondent respectfully requests that this Court deny Coté's petition for writ of habeas corpus.

Dated: August 24, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

ANYA M. BINSACCA
Supervising Deputy Attorney General

STEVEN G. WARNER
Deputy Attorney General
Attorneys for Respondent

20100673.wpd

Answer to Order to Show Cause; Memorandum of Points and Authorities

*Cote v. Ayers*
Case No. C07-2801 PJH

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   *Robert G. Cote v. Robert L. Ayers, Jr., Warden*

Case No.:    U. S. D. C., N. D., SAN FRANCISCO DIV., C 07-2801 PJH

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **August 24, 2007**, I served the attached

### ANSWER TO ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES WITH EXHIBITS A - K

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Robert G. Cote, B-81066**
**San Quentin State Prison**
**1 Main Street**
**San Quentin, CA 94964**
in pro per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **August 24, 2007**, at San Francisco, California.

|           J. Baker           |        /s/ Baker        |
|------------------------------|-------------------------|
|          Declarant           |        Signature        |

20102011.wpd

Case Name: *Robert G. cote v. Robert L. Ayers*
Case No.: U. S. D. C., N. D., San Francisco Div., C 07-2801 PJH (PR)

## INDEX OF EXHIBITS

| Exh. | Description |
|---|---|
| A | Abstract of Judgment |
| B | Life Prisoner Evaluation Report Subsequent Parole Consideration Hearing April, 2006 Calendar |
| C | Probation Officer's Post-sentence Report |
| D | Subsequent Parole Consideration Hearing, April 20, 2006 |
| E | Psychosocial Evaluation For The Board of Prison Terms September 199 Calendar Subsequent #9 |
| F | Petition For Writ of Habeas Corpus, Riverside County Superior Court, 10/26/06 |
| G | Order Re: Petition For Writ of Habeas Corpus, 11/14/06 |
| H | Petition For Writ of Habeas Corpus, Fourth District Court of Appeals, 1/23/07 |
| I | Order: Court of Appeal, Fourth District, Division Two, 2/1/07 |
| J | Petition For Review, Supreme Court, 2/8/07 |
| K | Petition for Review Denied, Supreme Court of California, 3/22/07 |