# EXHIBIT B

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
APRIL 2006 CALENDAR

## I.    COMMITMENT FACTORS:

### A.    Life Crime:

| | |
|---|---|
| *Count one:* | Murder 1st, PC 187 |
| Weapon (s): | None |
| Victim (s): | Rose McCarthy, age 49 |
| County, Case#: | Riverside County, Case #CR-14102 |
| Sentence: | 7 years to life |

| | |
|---|---|
| Minimum Eligible Parole Date: | September 18, 1983 |
| Received in CDCR: | March 3, 1977 |

### 1.    Summary of Crime:

According to reports prepared by the Riverside County, Sheriff's Department as related to the Post Sentence Probation Officer's Report dated March of 1977:

On September 17, 1976, at approximately 10:15 p.m., officers of the Riverside County Sheriff's Department responded to the area of Byron and Magnolia Streets on a call by a witness of a possible rape in progress. Upon arrival at 3821 Byron Street, Apt. 38, they met with witness H. Kelly, who advised them that a woman was being raped in the vegetable garden behind his apartment. The witness reported that as he was taking his dog outside, he noticed a commotion in the garden area. As he approached the area, he observed a male subject, who appeared to be kneeling over a female, while beating her. He also recalled seeing the victim's legs kicking upwards from the ground. He was able to give a sketchy description of the suspect and the clothes he was wearing.

A check of the garden area revealed the deceased nude body of a female, later identified as Rose McCarthy. The victim's face was badly damaged and covered in blood and her blouse had been pulled up and wrapped around her neck. Teeth marks were later observed on her shoulder and breasts. The cause of death was determined to be "aspiration of blood, due to internal oral hemorrhaging due to trauma to the face." A search of the immediate are revealed clothing, apparently belonging to the victim and a belt with an inscribed name of "Bob Cote". Officers subsequently responded to the defendant's residence where Cote was found asleep in his bedroom. A pair of dirt covered and blood soaked jeans were found on the floor and several spots of blood were visible on the bed sheets. Cote was placed under arrest.

COTE, ROBERT        B-81066      BPH, SUB HRG #11        CSP-SQ      APRIL 2006

In addition, officers located a yellow shirt with dark stripes on the ground near the intersection of Botherton and Magnolia. The shirt was stained with blood and dirt.

On October 20, 1976, Cote entered a plea of not guilty and denied the special allegations. On December 16, 1976, Cote entered an additional plea of not guilty by reason of insanity, whereupon, doctors were appointed to examine him.

On February 2, 1977, Cote waived jury trail and requested trial by court. On February 24, 1977, the court found Cote guilty of murder as charged and fixed the offense in the First Degree. The court further found Cote was sane at the time of the commission of the offense.

OFFENSE SUMMARY

2.    **Prisoner's Version:**

The following prisoner's version was provided by Cote on 3/9/06:

"On the morning of September 17, 1976 my sister's boyfriend, Frank Cefu (the spelling of his last name may not be current) picked me up, so I could work with him. We were tearing down this building. Towards mid-morning, the temperature was getting very warm. Frank went across the street to his car and brought the cooler, which was full of beer, back to where we were working. We drank a lot. I believe the combination of the hot temperature and the beer increased the affect of the alcohol. I know I was intoxicated because I remember slurring my speech and not walking straight. By the time I had eaten lunch I felt better. The rest of the day went like business as usual although I could still the effects of the alcohol. Sometime in the evening a car came pulling up to the work site. I recognized the man in the car as Steve because I had seen him two or three times before. Steve was the local heroin dealer. Steve talked to Frank for a while. After Steve left, Frank came up to me and said Steve was going to get us some dope. Steve came back and dropped off Reds and Speed. We cruised the rest of the day high as hell. Frank suggested we go to a local bar. I drank some more beer even though I knew I was high off the Reds and Speed. I was so messed up. I had never been that messed up before. Steve came into the bar. Frank and Steve talked alone once more. Frank asked if I wanted to do some heroin, I said hell yea! I went to the restroom to slam my fix. When I returned, Frank said he was going to pick up more heroin and asked if I wanted to go. I said, "Yea!" We left the bar on the way to get the heroin. On the way to the connection, we ate at a hamburger/burrito stand. I was so drunk and wasted from the dope and alcohol, I vomited. Steve left and when he returned he was so mad. He said the connection burned us. I asked Steve where was this person who stole from me. Steve said in a very loud voice, "Look over there, that was the connection." It was a woman. I walked up to her and asked her where was my money. I talked to this woman for a while. She said, "Come with me and I will get your money." Frank, Steve, and I walked across the street with her. Frank

stopped and turned to leave. I asked him where was Steve. Frank left. Someone hit me on the back of my head. I fell to the ground. I got up looking for who hit me and fought back. The person went down. Before I could regain myself, I was hit from behind again. When I finally focused again, I came up on my knees, stood up and I fell. I go up again and turned to look behind me and I saw the lady who I had been talking to lying on the ground. I heard sirens and I ran."

3.    **Aggravating/Mitigating Circumstances:**

   a.  Aggravating Factors:
       -   The victim was vulnerable due to her intoxicated state.
       -   Cote had an opportunity to cease, but continued with the crime.

   b.  Mitigating Circumstances:
       -   Cote was under the influence of alcohol and drugs.

II.  **PRECONVICTION FACTORS:**

A.  **Juvenile Record:**

According to Riverside County POR, page 4, Cote's juvenile record consisted solely of traffic violations.

B.  **Adult Convictions:**

| 11/04/75 | Conviction for PC 459, Burglary (misdemeanor) | Sentenced to 2 years of probation, 2 days county jail, and $125 fine. |
|---|---|---|

C.  **Personal Factors:**

Cote is the third child of seven children born to Robert and Doris Cote. Cote indicated that his parents separated when he was approximately 14 years of age. Cote was described to have had a chaotic childhood due to his father's drinking problem and physical abuse. Cote said he has fathered one child, Robert Cote, who lives with his mother Kim Hanna in Arizona. Cote stated he dropped out of high school after completing the 10th grade to join the United States Army in May of 1974. He indicated he was honorably discharged in October 1974. His work history consisted mostly of working in car washes and gas stations. He indicated his longest time of employment was for Dean's Custom Furniture in Riverside, California, which terminated with his arrest for the current offense. Cote stated he was an alcoholic. He expounded on his rather extensive history relating to controlled substances, indicating he used marijuana, heroin, cocaine, reds, whites, yellow jackets, PCP, and miscellaneous other substances. He began using marijuana at the age of 13 and on a daily basis since age 14. He began "snorting" heroin at age 18, but stopped using it about 6 months prior to the commitment offense. He indicated a similar pattern of cocaine abuse.

COTE, ROBERT         B-81066    BPH, SUB HRG #11         CSP-SQ    APRIL 2006

## III.   POSTCONVICTION FACTORS:

### A.   Custody History:

| | |
|---|---|
| 03/03/77 | Cote began his incarceration at California Institution for Men (CIM) Security Housing Unit (SHU) due to the nature of the offense. |
| 04/07/77 | He was transferred to California Medical Facility (CMF). |
| 03/15/79 | He was transferred to California Men's Colony-East (CMC-E). His Initial Board of Prison Hearings (BPH) was held on 8/27/82. Parole was denied for one year. On 11/30/83, during his Subsequent BPH #1 parole was denied for two years. On 4/11/86, parole was denied for 2 years during his Subsequent BPH #2. His 4/88 Subsequent BPH #3 was postponed on 4/26/88, but held on 3/24/8 as Subsequent BPH 4. Parole was denied for one year. Parole was denied for 2 years again on 3/26/90 during his Subsequent hearing # 5. His Subsequent BPH #6 was held on 4/1/92. He received a 2 year denial. |
| 09/18/92 | Cote was transferred to Mule Creek State Prison (MCSP) due to population concerns at CMC-E where he remained until his transfer to California Training Facility (CTF). His custody remained at Med AR and he was placed on the support services waiting list during his Initial Review on 9/23/92. On 3/9/93 during his Annual Review he was placed on the Education waiting list. On 9/14/93 during a Program Review Cote UCC recommended Cote be non-adversely transferred to CRC or RJD due to family hardship. |
| 10/25/93 | He was transferred to California Training Facility (CTF) due to family hardship and continued his program at Med AR custody. His Annual Review was held on 3/9/94. UCC recommended a review by the CSR for Level II placement. His next Annual Review was held on 2/28/95. His program was not modified. Subsequent BPH # 7 was held on 3/21/94. Parole was denied for 2 years. His Post Board Review was held on 4/29/94. UCC acted to retain him at Level II, continue present program. On 5/17/95, UCC recommended an adverse transfer to San Quentin or Folsom State Prison. Cote was endorsed to Ironwood State Prison (ISP). |
| 06/16/95 | Transferred to Ironwood State Prison (ISP). His Initial Review was held on 7/11/96 within the Administrative Segregation Unit(AdSeg). He was recommended for transfer to CTF-II/SQ-II on 10/8/96. He remained in AdSeg at ISP until he was transferred to CTF--AdSeg. His Subsequent BPH # 8 was held on 9/17/96. Parole was denied for 3 years. |
| 11/06/96 | He was received at California Training Facility's (CTF) AdSeg unit. He was released to the general population on 11/14/96. His Annual Review was held on 3/28/97. His program was unchanged. He was placed back into AdSeg on 5/1/97 and was recommended for an adverse transfer to CMF/LAC III. |

A.    **Custody History:** *con't*

| | |
|---|---|
| 7/10/97 | His Initial/Annual Review was at CSP-Solano was held on 7/22/97. His Annual Reviews were held on: 7/31/98, 3/23/99, 3/28/00, 3/15/01, 3/21/02, and 5/15/03. His program was not altered. He was recommended for transfer to San Quentin-II/Folsom State Prison II during his 5/15/03 Annual Review. His Subsequent BPH # 9 was held on 3/14/00. Parole was denied for 3 years. Subsequent BPH # 10 was held on 4/16/03. Cote stipulated during at the time the hearing was to convene and received a 2 year denial of parole. |
| 6/17/03 | Cote was received at San Quentin State Prison as a non-adverse transfer from CSP-SOL. His Initial Review was held on 7/2/03. He was placed on the Prison Industry Authority PIA) waiting list. His custody remained at Med AR. Cote's Annual Reviews were held on 2/26/04, 2/3/05, and 2/1/06 with no changes to his program noted at the last review. |

Cote has performed numerous jobs since his incarceration to include: porter, inner warehouse worker, yard crew, vocational shoe repair, knitting millinery, clothing distribution, gym worker, work crew member, quad and Captain runner, laundry, P.I.A., meat cutting, carpentry maintenance carpentry, line server, and currently P.I.A. sewing machine operator. Although he has a negative disciplinary history, he has remained disciplinary free since his arrival at San Quentin. His work history indicate a satisfactory to excellent work habits and skill level.

B.    **Therapy & Self Help Activities:**

| | |
|---|---|
| 02/05/81 – 05/18/81 | Participated in Occupational Therapy for Divertional Craft Activities |
| 11/30/81 – 07/28/82 | Participated in Group Therapy |
| 02/01/83 | Completed a four-week program in Beginning Stress Management and Relaxation |
| 02/86 – 09/86 | Participated in Alcoholic Anonymous |
| 06/27/88 | Completed a four-week therapy group program in Beginning Stress Management and Relaxation |
| 08/15/88 | Completed a self-help program focused on his abuse of substances that led up to his crime and adapting to a drug-free life style |
| 08/26/88 | Completed a four-week program in Advanced Relaxation Training. |
| 08/18/88 – 11/10/88 | Participated and completed a Rational Behavior Training Group program |
| 02/20/89 | Completed an eight-week program in Communication Skills Training |

COTE, ROBERT        B-81066      BPH, SUB HRG #11      CSP-SQ      APRIL 2006

B.     **Therapy & Self Help Activities:** *con't*

| | |
|---|---|
| 05/19/89 | Participated and completed Anger Control Group Therapy |
| 06/29/92 | Completed a 24 week group therapy in Criminal Thinking |
| 01/99 – 03/03 | Participated in Narcotics Anonymous |
| 07/30/04 | Certificates of Achievement: Emergency Management Institute—Principles of Emergency Management; Hazardous Materials- A Citizen's Orientation; Decision Making & Problem Solving; Effective Communication; and, Mitigation for Homeowners |
| 12/13/04 | Certificate of Proficiency—Mattress Innerspring |
| 04/25/05 | Participated as a student in Project R.E.A.C.H. |
| 05/10/05 | Received High School Equivalency Certificate |
| 05/25/05 | Completed the "Workplace Essential Skill" training syllabus—Employment |
| 09/07/05 | Completed the "Workplace Essential Skill" training syllabus—Communication and Writing. |
| 10/05/05 - Present | Participated as a tutor for Project R.E.A.C.H. |
| 10/17/05 | Completed San Quentin's College Program Math 50 class |
| 11/14/05 | Completed the "Workplace Essential Skill" training syllabus—Math |
| 12/06/05 | Completed the "Workplace Essential Skill" training syllabus—Reading |

C.     **Disciplinary History:**

*CDC 115s:*

| | | |
|---|---|---|
| 06/15/79 | Transporting Contraband in Laundry Cart | Guilty. Warned and Reprimanded |
| 06/23/79 | Use of Foods | Guilty. Eight hours of extra duty, 4 hours suspended for 90-days pending no like behavior |
| 07/19/79 | Stealing Bread Dough | Guilty, 8 hours extra duty. |
| 02/14/80 | Horseplay | Guilty, one evening confined to quarters (CTQ) |
| 05/20/80 | Being in Another Inmate's Room | Guilty, 2 evenings CTQ |
| 10/02/80 | Contraband-Un-issued Property (possible weapon) | Guilty, one weekend CTQ-suspended for 30-days |
| 12/15/80 | Work Performance | Guilty, 16 hours extra duty |
| 10/02/80 | Contraband-Un-issued Property (possible weapon) | Guilty, one weekend CTQ-suspended for 30-days |
| 12/15/80 | Work Performance | Guilty, 16 hours extra duty |

C.    **Disciplinary History:** *con't*

*CDC 115s:*

| | | |
|---|---|---|
| 12/22/80 | Conduct-Disruptive Behavior on The Yard | Guilty, 2 evenings CTQ |
| 12/30/80 | Out of Bounds | Guilty, 2 evenings CTQ |
| 01/19/81 | Conduct | Guilty, 1 evening CTQ |
| 08/26/81 | Performance | Guilty, 1 weekend CTQ—suspended for 60 days |
| 09/29/81 | Horseplay | Guilty, 5 evenings CTQ with evenings suspended |
| 10/16/81 | Out of Bounds | Guilty 1 day CTQ |
| 10/23/81 | Sexual Behavior | Guilty, 2 evenings CTQ |
| 11/23/81 | Refusing to Turn Down Radio | Guilty, radio impounded for 60 days |
| 12/31/81 | Under the Influence of Intoxicant Stimulants and Sedatives | Guilty, 5 days CTQ |
| 10/22/83 | Intentionally Harming a State Protected Bird (seagull) | Guilty, 1 weekend of CTQ |
| 09/25/84 | Theft of State Property | Warned and Reprimanded |
| 03/22/85 | Conduct and Disrespect | Guilty, refer for unassignment from Vocational Shoe Repair and 5 days CTQ |
| 06/19/85 | Performance | Guilty, reduced to Administrative Rules Violation and warned and reprimanded |
| 07/15/85 | Rights and Respects of Others | Guilty, reduced to an Administrative Rules Violation |
| 10/24/85 | Performance | Guilty, 4 days CTQ and unassigned form Clothing Distribution |
| 12/16/85 | Sexual Behavior | Guilty, 2 weekends CTQ |
| 03/27/87 | Conduct/Force & Violence | Guilty, warned, reprimanded, and placed in Privilege group "C" for 90 days |
| 03/16/88 | Contraband | Guilty. Assessed 1 weekend CTQ. |
| 11/30/92 | Physical Altercation | Guilty, 30 days forfeiture of work time credits and 6 days CTQ with credit for time served |
| 02/05/95 | Physical Altercation | Guilty, 90 days of loss of credit, counseled and reprimanded, and 10 days CTQ/Cell feed status on PM and RDOs |
| 04/19/95 | Involvement in Inmate Pressure Group | Guilty, 30 days loss of credits, warned and reprimanded |

C.    <u>Disciplinary History:</u> *con't*

    *CDC 115s:*

| | | |
|---|---|---|
| 10/27/95 | Conduct/Pressuring | Guilty, 90 days forfeiture of behavior credits. |
| 07/24/96 | Pressuring/Threatening Another Inmate | Guilty, 90 days loss of credits counseled and reprimanded |
| 05/02/97 | Participation in a Disruptive Group | Guilty, 60 days forfeiture of credits, counseled and reprimanded |
| 05/03/01 | Possession of Inmate Manufactured Alcohol | Guilty, no credit forfeiture due to not meeting time constraints—one year mandatory attendance of Alcoholics Anonymous, warned and counseled |

    *CDC 128-As:*

| | |
|---|---|
| 08/29/98 | Failure to Comply With Get Down Policy |
| 09/03/98 | Delayed A Peace Officer From Performing A Duty |
| 03/11/00 | Non-Compliance With Grooming Standards |
| 02/05/00 | Smuggling Contraband |
| 03/24/03 | Inciting |

## IV.    <u>FUTURE PLANS:</u>

A.    **Residence:**

Cote plans to reside with his mother, Doris Cole at 3860 Stotts Street, Riverside, California 92903, (909) 359-1665 until he becomes financially secure and move out on his own.

B.    **Employment:**

Cote indicated he is a certified welder and he will seek employment in that field as soon as he is granted parole. Cote contacted the Employment Development Department in Riverside to inquire about housing and employment opportunities.

## V.    <u>USINS ISSUES</u>:

Not Applicable.

## VI.  SUMMARY:

The following summary represents my observations based on the information available for perusal in Cote's Central File, information obtained from him during an interview held on March 9, 2006 lasting approximately 3 hours, and my personal observation during the three year period I've been responsible for overseeing his program:

A.  His criminal history prior to the commitment offense was inconsequential; however, Cote has an extensive disciplinary record while incarcerated.  It is noted prior to this interview Cote had not discussed his crime in detail.  During the interview, Cote did not rationalize his crime and he confessed having committed the crime as charged.  He was forthright about his state of mind during the commitment of the crime and did not attempt to shift the blame to others. There was no way to minimize the fact he was under the influence of both alcohol and drugs when he committed the offense.  Also, Cote verbalized his remorse for the pain and suffering he has caused others.  It is my opinion should Cote continue his sobriety and should he be granted parole he will re-integrate into society with enough skills to keep him employed and with the elimination of the influence of alcohol and drugs, he will become a productive member of society.

B.  Prior to release, Cote should remain disciplinary free, utilize support services and activities to continue his self-discover process, and continue to upgrade academically and vocationally when possible.

C.  This Board report is based on a two parts, a 3.0 hour interview which included a review of Cote's C-file and an in-depth discussion of the commitment offense.

D.  Cote was afforded an opportunity and chose to examine his central file on 3/9/06.  See CDC-128 B dated 3/9/06.

E.  Cote stated no special accommodations, for the purposes of effective communication, are required per the Armstrong Remedial Plan (ARP).

COTE, ROBERT        B-81066        BPH, SUB HRG #11        CSP-SQ        APRIL 2006

I. TATE, CC-I

V. KELLEY, CC-II

C. BELSHAW, C & PR