UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT G. COTÉ,

         Petitioner,

vs.

ROBERT L. AYERS, Warden,

         Respondents.

No. C 07-2801 PJH (PR)

**ORDER DENYING HABEAS PETITION**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to a denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner did not file a traverse. For the reasons set forth below, the petition will be denied.

**BACKGROUND**

Petitioner was convicted of first degree murder in 1976 and sentenced to seven years to life in state prison. On April 20, 2006, after a hearing before the Board of Parole Hearings ("Board"), during which petitioner was represented and was given an opportunity to be heard, the Board found petitioner unsuitable for parole. Resp. Ex. D at 98-104. The Board based its decision upon characteristics of the offense, petitioner's escalating pattern of criminality, his disciplinary record in prison, his failure to complete drug and alcohol programs in prison, the weakness of his parole plans, and the prosecutor's opposition to parole. *Id.* at 98-99.

Following the parole hearing, petitioner filed a petition for writ of habeas corpus in

superior court, which summarily denied the petition. Resp. Ex. G. Petitioner subsequently filed habeas petitions for relief in the state court of appeal and the state supreme court, both of which were also summarily denied. Resp. Exs. I, K. Thereafter, petitioner filed this federal petition for a writ of habeas corpus. Respondent does not dispute that the petition is timely and presents claims that were exhausted in state court.

## DISCUSSION

### I. Standard of Review

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision that is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must

be "objectively unreasonable" to support granting the writ. *Id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended,* 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

## II.    Issues Presented

Petitioner contends that: (1) his due process rights were denied when the Board denied him parole based on the circumstances of his crime and his criminal record prior to the crime, facts more than thirty years old; (2) the Board failed to provide genuine individualized consideration of petitioner's suitability for parole; and (3) the Board used a "some evidence" standard of proof in reaching their decision, in violation of due process.

Among other things, respondent contends that California prisoners have no liberty interest in parole and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions go to whether petitioner has any due process rights at all in connection with parole, and if he does, what those rights are, they will addressed first.

### A.    Respondent's Contentions

#### 1.    Liberty Interest

Respondent contends that California law does not create a liberty interest in parole. However, the Ninth Circuit has held that it does. *See Sass v. California Bd. of Prison*

3

*Terms*, 461 F.3d 1123, 1127-28 (9th Cir. 2006). Respondent's argument as to liberty interest is without merit.

### 2. Due Process Protections

Respondent contends that even if California prisoners do have a liberty interest in parole, the due process protections to which they are entitled by clearly-established Supreme Court authority are limited to notice, an opportunity to be heard, and a statement of reasons for denial. That is, respondent contends there is no due process right to have the decision supported by "some evidence." This position, however, has been rejected by the Ninth Circuit, which has held that the Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record", or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915. The some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d). *See Sass*, 461 F.3d at 1128-1129.

### B. Petitioner's Claims

#### 1. "Biggs Claim"

In a line of relatively recent cases the Ninth Circuit has discussed the constitutionality of denying parole when the only basis for denial is the circumstances of the offense. *See Hayward v. Marshall*, 512 F.3d 536, (9th cir. 2008); *Irons v. Carey*, 505 F.3d 846, 852-54 (9th Cir. 2007); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 915-17 (9th Cir. 2003).

In *Biggs* the court said that it might violate due process if the Board were to continue to deny parole to a prisoner because of the facts of his or her offense and in the face of evidence of rehabilitation. 334 F.3d at 916-17. No legal rationale for this statement was provided, and it was unclear whether the court was suggesting that the continued denial of

4

parole would be a new sort of due process violation or whether it was simply expressing the thought that with the passage of time the nature of the offense could cease to be "some evidence" that the prisoner would be a danger if paroled. This ambiguity was helpfully cleared up in *Irons*, where the court clearly treated a "some evidence" claim as different from a "*Biggs* claim." *Irons*, 505 F.3d at 853-54. It appears, putting together the brief discussions in *Biggs* and *Irons*, that the court meant that at some point denial of parole based on long-ago and unchangeable factors, when overwhelmed with positive evidence of rehabilitation, would be fundamentally unfair and violate due process. As the dissenters from denial of rehearing en banc in *Irons* point out, in the Ninth Circuit what otherwise might be dictum is controlling authority if the issue was presented and decided, even if not strictly "necessary" to the decision. *Irons v. Carey*, 506 F.3d 951, 956 (9th Cir. Nov. 6, 2007) (dissent from denial of rehearing en banc) (citing and discussing *Barapind v. Enomoto*, 400 F.3d 744, 751 n. 8 (9th Cir.2005)). Depending on whether the discussion of dictum in the dissent from denial of rehearing en banc in *Irons* is correct, it thus may be that the Ninth Circuit has recognized that due process right, which for convenience will be referred to in this opinion as a "*Biggs* claim." Here, petitioner's first issue raises such a "*Biggs* claim," insofar as he contends that simply using the circumstances of his offense and prior criminal records as grounds for denial violates due process.

   Petitioner has failed to establish the predicate for his *Biggs* claim. First, petitioner's parole was not denied solely because of the circumstances of his offense and prior criminal record, but also because of his extensive disciplinary record in prison, his failure to participate in prison programming for drug and alcohol dependence, and the weakness of his parole plans. Resp. Ex. D at 98-99. For instance, petitioner had "34 serious disciplinary reports," and had stopped participating in Alcoholics Anonymous in 2003, after only four years. *Id.* at 99; Resp. Ex. B. Moreover, assuming for purposes of this discussion that *Biggs* and *Irons* recognized an abstract due process right not to have parole repeatedly denied on the basis of the facts of one's crime and in the face of extensive evidence of rehabilitation, and also assuming arguendo that the right was violated in petitioner's case,

petitioner still cannot obtain relief on this theory, because as there is no clearly-established United States Supreme Court authority recognizing a "*Biggs* claim." The state courts' rulings therefore could not be contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

### 2. "Some Evidence" Claim

A review of the Board's decision also reveals that it was supported by "some evidence," in accordance with due process. The Board described the circumstances of the crime, based upon a "Life Prisoner Evaluation Report" prepared for the hearing. Resp. Ex. D at 24; Ex. B (evaluation report) at 1-2. That version, in turn, was based on the probation officer's post-sentencing report. Resp. Ex. B at 1; Ex. C (probation officer's report). The probation officer's report's recitation of the facts of the crime was based on the police reports, which are not in the record. Resp. Ex. C at 4-6. The Board summarized the facts of the commitment offense as follows:

> On September 17, 1976, at approximately 10:15 p.m. officers of the Riverside County Sheriffs Department responded to the area of Byron and Magnolia Street on a call by witnesses of a possible rape in progress. Upon arrival, they witnessed H. Kelly, who advised them that a woman was being raped in the vegetable garden behind his apartment. The witness reported that as he was taking his dog outside, he heard this commotion in the garden area. As he approached the area, he observed a male subject who appeared to be kneeling over a female while beating her. He as [sic] recalled seeing the victim's legs kicking upward from the ground. He was able to give a sketchy description of the individual and clothing he was wearing. A check of the garden area revealed the deceased new [sic] body of a female later identified as Rose McCarthy. The victim's face was badly damaged, covered with blood, and her blouse had been pulled up and wrapped around her neck. Teeth marks were later observed on her shoulder and her breast. The cause of death was determined to be aspiration of blood to the internal oral hemorrhaging due to trauma to the face. A search of the immediate area revealed clothing, apparently belonging to the victim, and a belt with the inscribed name Bob Cote. Officers subsequently responded to the inmate's residence where the inmate was found asleep in his bedroom. A pair of dirt-covered and blood-soaked jeans were found on the floor, and several spots of blood were visible on the bed sheets, which [sic] he was place[d] under arrest. In addition, officers located a yellow shirt with dark stripes on the ground near the intersection of [] and Magnolia. The shirt was stained with blood and dirt.

*Id.* at 25-27 (internal quotations omitted). Petitioner denied that there had been a rape in

progress but otherwise confirmed this account of the offense. *Id.* at 27-28. Petitioner also stated that he had taken alcohol, heroin, methamphetamine, and phencyclidine ("PCP") on the day of the murder, and that he had believed that the victim had refused to give him heroin after taking his money. *Id.* at 28 -34.

Petitioner had previously been convicted of burglary in 1975, which petitioner explained was his attempt to steal some drugs, and had been convicted of public intoxication. *Id.* at 21-24. Petitioner had been drinking alcohol since the age of ten, had been using a wide variety of drugs since the age of thirteen, and by the time of the murder he was using drugs "mostly everyday." *Id.* at 2; Ex. C at 3. At the hearing, petitioner indicated that he had ceased participating in Alcoholics Anonymous in 2003, after starting in 1999. Resp. Ex. D at 43. The Board further noted that petitioner had received 34 Rules Violation Reports ("RVRs") in prison, most recently in 2001 for possession of inmate-manufactured alcohol. Resp. Ex. B at 6-8. A psychological expert diagnosed petitioner with polysubstance dependance. Resp. Ex. E at 4. Finally, a district attorney from Riverside County appeared at the parole hearing and opposed granting petitioner parole. Resp. Ex. D at 75-76.

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. *Sass*, 461 F.3d at 1128-29 (adopting some evidence standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985)). "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. *Id.* at 1128 (quoting *Hill*, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" *Id.* at 1129 (quoting *Hill*, 472 U.S. at 457).

In assessing whether the Board's denial of parole was supported by some evidence, the court's "analysis is framed by the statutes and regulations governing parole suitability

determinations in the relevant state." *Irons*, 505 F.3d at 851 (citing *Biggs*, 334 F.3d at 915). "Accordingly, here we must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [petitioner's] case constituted an unreasonable application of the 'some evidence' principle articulated in *Hill*, 472 U.S. at 454." *Id.*

Under California law, "[t]he Board must determine whether a prisoner is presently too dangerous to be deemed suitable for parole based on the 'circumstances tending to show unsuitability' and the 'circumstances tending to show suitability' set forth in 15 Cal. Code. Regs. § 2402(c)-(d)." *Id.* The circumstances tending to show that a prisoner is unsuitable include the following: (1) the commitment offense, where the offense was committed in "an especially heinous, atrocious or cruel manner;" (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others;" (4) commission of "sadistic sexual offenses;" (5) "a lengthy history of severe mental problems related to the offense;" and (6) "serious misconduct in prison or jail." 15 Cal. Code. Regs. § 2402(c). The circumstances tending to show that a prisoner is suitable for parole include the following: (1) the prisoner has no juvenile record; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the prisoner suffered from Battered Woman Syndrome at the time of committing the crime; (6) the prisoner lacks any significant history of violent crime; (7) the prisoner's present age reduces the risk of recidivism; (8) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release;" and (9) institutional activities "indicate an enhanced ability to function within the law upon release." 15 Cal. Code. Regs. § 2402(d).

Here, the Board's decision was supported by evidence of the extremely violent and callous nature of petitioner's crime – specifically his having beaten the victim to death. To be sure, at the time of the parole hearing, this crime had been committed thirty years

8

earlier. However, there was a substantial amount of evidence since the commission of the crime that petitioner remained at risk of endangering the public. During his time in prison, petitioner had received 34 serious rules violations, most recently in 2001. Furthermore, there was evidence that petitioner continued to struggle with drug and alcohol dependency, in particular his having stopped Alcoholics Anonymous in 2003 and his discipline in 2001 for possessing inmate-manufactured alcohol. This evidence was especially relevant to petitioner's continued dangerousness because of the fact that he attributed the crime to his being under the influence of drugs and alcohol. There was also evidence that petitioner's parole plans were scant; he indicated that he wanted to live with his mother and that he is a certified welder, but there was no confirmation that he had a place to live or specific employment prospects upon his release. Resp. Ex. D at 61, 65, 99.

The nature of petitioner's commitment offense, the combination of drugs and alcohol playing a role in petitioner's commitment offense and the evidence that he continued to struggle with substance abuse, the abundance of serious disciplinary violations in prison, and his questionable parole plans all amount to some evidence that petitioner presented an unreasonable risk of danger to the public if released. Consequently, the denial of parole did not violate petitioner's right to due process, and the state courts' denial of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### 3. Petitioner's Remaining Claims

Petitioner also claims that the Board failed to provide individualized consideration of his suitability for parole, and used a "some evidence" standard of proof in reaching their decision. The record plainly refutes these claims. The transcript of the parole hearing reveals that the Board examined petitioner's individual circumstances in detail, including the facts of his commitment offense, his prison record, his parole plans, the letters offered in his support, and statements from petitioner's attorney, a representative of the victim, and the district attorney. *See* Resp. Ex. D. Furthermore, there is no indication in the record, and petitioner points to none, that the Board applied a "some evidence" standard in

1 reaching its decision. In reaching its decision, the Board identified the specific facts and
2 circumstances of petitioner's case that weighed against a finding of suitability under the
3 pertinent state regulations. *Id.* at 98-99. As such, the parole record reveals that petitioner
4 received individualized consideration and that the Board did not apply a "some evidence"
5 standard, and petitioner is not entitled to habeas relief on these claims.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 23, 2009

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.07\COTÉ801.RUL.wpd